GULF & SHIP ISLAND RAILROAD COMPANY *v.* TOWN OF SEMINARY.

MUNICIPALITIES.   *Use of name.   Injunction.   Code* 1892, *chapter* 93.

> A municipal corporation, having no other powers than those granted to towns by the laws of this state, code 1892, ch. 93, entitled "Municipalities," cannot enjoin the use of its name for designating another place, and the inconveniences resulting to its citizens therefrom, does not give the municipality a right to complain.

FROM the chancery court of, first district, Hinds county.

HON. HENRY C. CONN, Chancellor.

The town of Seminary (situate in Covington county, Mississippi), appellee, was complainant in the court below; the railroad company, appellant, was defendant there. The suit was in chancery and the bill prayed for an injunction restraining the railroad company from naming a place (one-half mile distant from the town, at which it had established a depot) Seminary. The complainant was incorporated, under code 1892, ch. 93, as the "Village of Seminary," in 1899. In March, 1902, the village of Seminary was, under the provision of said code chapter, rechartered as the "Town of Seminary," and the suit was thereafter begun. The charges against the defendant railroad company were that it had established a station and stopping-place just north of the complainant, about a half mile, and had there established a depot, and stops its passenger and freight trains there, and that it had designated the stopping-place as "Seminary," and placed a sign on its depot reading, "Seminary," and sells tickets to the place as "Seminary," and designates the place on its schedules, time tables and other documents as "Seminary." The bill averred that what the appellant had done caused con-

fusion, inconvenience and irreparable injury to complainant and its citizens and persons who desire to do business with it and in it. It is further charged that, if a person desires to visit complainant town, the appellant sells him a ticket to its afore-mentioned depot and puts him off there; that, if citizens of the complainant town order freight to be shipped to Seminary, the freight and goods are, by the defendant, delivered at its depot aforesaid, and that this causes great and irreparable damage, inconvenience and confusion to the complainant and to its citizens. The complainant further charged in its bill that it has the sole and exclusive right to the use of the name, "Seminary," as applied to a town or stopping-place along the line of the defendant railroad; that the acts charged to have been committed by appellant constitute a violation of its "ancient, sacred and legal rights." To this bill the defendant demurred. The court below overruled the demurrer, and defendant appealed to the supreme court.

*McWillie & Thompson* and *E. J. Bowers*, for appellant.

We are unable to find any principle of law which will maintain the decree appealed from. It will be noted that the complainant is a municipal corporation and not a business, commercial or trading corporation. We find an abundance of authority in the books for the protection of trading, business or commercial corporations from an abuse of a name when the use of it by another encroaches upon a property right. We find that the right is in the nature of a right to a trade mark, and courts of equity have enjoined the use of the name of a trading, business or commercial corporation where it is calculated to and was intended to represent to the world that the defendant's business was the plaintiff's business, and so, by a fraudulent misstatement, deprive the complainant of its profits of the business which would otherwise come to it. This is the basic principle upon which all such cases are rocked. The principle can have no application to a municipal corporation.

Before citing authorities, let us call the court's attention to the fact that in many jurisdictions (but not in this state) the law providing for the creation of corporations prohibits the grant of a charter to a new company by a name which has already been appropriated by an existing corporation, or by a name so near that of the older corporation as to mislead and deceive. These statutes invest an existing corporation with something in the nature of an exclusive right to its name, and any cases found in the books, or which may be cited by opposing counsel as authority against us, must be considered in the light of the statutes under which the complaining corporation was created.

We have found two cases, in the same volume, which are quite interesting, and which are pertinent authorities in the case under discussion. The first is *Levy* v. *Walker*, 10 Chy. Div. (Law Rep.), 447, decided in 1879. In this case, James, J., in delivering the opinion of the court, stated: "It should not be forgotten in these cases that the sole right to restrain anybody from using any name that he likes in the course of any business he chooses to carry on is a right in the nature of a trade mark; that is to say, a man has a right to say, 'You must not use a name, whether fictitious or real—you must not use a description, whether true or not—which is intended to represent, or calculated to represent, to the world that your business is my business, and so, by fraudulent misstatements, deprive me of the profits of the business which would otherwise come to me.' That is the principle, and the sole principle, on which this court interferes. The court interferes solely for the purpose of protection to owners of a trade or business from a false invasion of that business by somebody else. It does not interfere to prevent the world outside from being misled into anything. . . . . An individual plaintiff can only proceed on the ground that, having established a business reputation under a particular name, he has a right to restrain anyone else from injuring his business by using that name."

We wish the court to take the principle announced in the above quotation and apply it to the facts in this case. As an aid to the court in so doing, we would call attention to the fact that the business of the municipal corporation cannot in any way be likened to a trade mark. The naming of the depot just north of the complainant is not shown to have been intended to represent, nor is it calculated to represent, to the world that the railroad's business at the depot is the business of the municipal corporation, nor does the action of the railroad company amount to a fraudulent misstatement which would deprive complainant of the profits of a business for which it was created and which would otherwise come to it. How the naming of the depot, just on the outer edge of a town, by the name of the town can effect the municipal corporation governing the town (and it has no other business) is incomprehensible. The railroad company has not fraudulently invaded the business of the complainant. It in no way interferes with it in the discharge of its duties as a municipal corporation. The town of Seminary may go on and enact and enforce ordinances for good government, may establish streets and change their grade, may lay down sidewalks, provide lights and water for the municipality and its inhabitants, and the naming of the depot cannot in any way interfere with it in its municipal business. The averment in the bill that the town of Seminary, the complainant, is injured, cannot be true, and here we invoke an objection to the bill, that facts are not stated from which damages can be inferred to the complainant. It will be found, as decided by the case from which the above quotation is taken, that the courts do not interfere to prevent the world outside from being misled into anything, and that an individual plaintiff can only proceed on the ground that, having established a business reputation under a particular name, he has a right to restrain anyone else from injuring his business by using that name. The averment of the bill of complaint, therefore, that the citizens of Seminary are inconvenienced is without legal merit

and does not strengthen the bill in this case, for, as above stated, the courts do not interfere to prevent the outside world from being misled or damaged. The cases in the books generally recognizing the trade mark theory are suits by one corporation against another, restraining the defendant from appropriating the name of the complainant corporation. That is not charged in this case. The charge is that defendant has named the depot, another place, by the name, "Seminary."

We have found but one case in the books which involved the naming of a place. That is the case of *Day* v. *Browning*, 10 Chy. Div. (Law Rep.), 294–307 (the same volume which contains the case of *Levy* v. *Walker*, *supra*). *Day* v. *Browning* is interesting, and the chancellor who granted the injunction delivered as strong an argument as can be made in maintenance of his position, but, upon review, the court of appeals, by a unanimous vote, reversed the chancellor and decided that the act of defendant in calling his house by the name of plaintiff's house was not a violation of any legal right. The facts were, that the complainant and the defendant each owned handsome houses, located quite near each other. The complainant's house had been known by the name of "Ashford Lodge," and the defendant's had been known by the name of "Ashford Villa," and these names had been used to designate the respective houses for a long number of years. The defendant, however, changed the name of his house and appropriated the name of the complainant's house; the result of which was that two houses in the same immediate vicinity were designated as "Ashford Lodge." The complainant sought to restrain the defendant from the use of the name, but the court denied him all relief.

The case last mentioned is the only one in the books that we have been able to find where an effort was made to enjoin the designation of a place by a specific name. We find in the books, however, another case of interest, decided in 1848, the case of *Clark* v. *Freeman*, 11 Beav., 112, and it was this: One Dr. James Clark (note there is not a final "e" to his name)

had established a distinguished reputation in England as a physician, especially experienced and skilful in the treatment of consumption. Freeman, a low grade apothecary, manufactured and advertised a quack medicine, which he named, "Dr. James Clarke's (note the final "e") Consumption Pills." Clark was injured thereby in his reputation, especially with his professional brethren, from whom he received much business, because Freeman's advertisements carried to their minds, by implication, the idea that the doctor was sanctioning unprofessional methods and dealing in quack medicine: Dr. Clark sought an injunction to prevent the use of his name, but it was denied him. There was no property right involved; at the most, the published advertisements could not be more than libels, and a court of equity could not enjoin libels, in the first instance, if at all. Note that the injunction to prevent the naming of the pills was denied because there was no property right involved, and that feature of the case which relates to libels is an additional one, in no way involved in the present case.

We have, therefore, two highly respectable English authorities, believed to be the only ones on the subject, which deny an injunction, one to prevent the naming of a dwelling-house by the name which had long been used by another to designate a different residence, and the other denies that an individual has a right by injunction to prevent his name being applied by a quack apothecary to a worthless medicine.

If injunction will not prevent the naming of a dwelling-house or the naming of pills, how can an injunction be used to prevent the naming of a railroad station in the very edge of a town? Your honors are familiar with the situation at the town of Brandon, and the station a mile away. Could the town of Brandon enjoin the Alabama & Vicksburg Railway Company from calling its depot "Brandon"? We can find no principle which would authorize an injunction in such a case.

But, to return to the books, we wish to call the court's at-

tention to the case of *Charles S. Higgins Company* v. *Higgins Soap Co.*, 134 N. Y., 462, s.c. 43 Am. St. Rep., 769. From this case we learn that, as between business and trading corporations, whose names are protected as if they were trade marks, whether or not an injunction will lie at the suit of one such corporation to prevent another from assuming its name depends upon a variety of circumstances, viz: (The paragraphing is ours.)

(*a*) The identity or similarity of the names;

(*b*) The identity of the business of the respective corporations;

(*c*) How far the name is a true description of the kind and quality of the article manufactured or the business carried on;

(*d*) The extent of the confusion which may be created or apprehended;

(*e*) And other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy.

From this it is clearly inferable that none other than a business corporation is entitled to an injunction in such case, because at least two of the controlling considerations, the two designated above in paragraphs (*b*) and (*c*), can only exist in case of manufacturing, business and commercial companies, unless the remedy is given by statute, either directly or inferentially.

The case of *The Society of the War of 1812* v. *The Society of the War of 1812 in the State of New York*, 46 App. Div., (N. Y.) 508, is not against us. That case turned upon the provisions of the statutes of the state which prohibited a corporation from being created "under the name of an existing domestic corporation, or a name so nearly resembling it as to be calculated to deceive;" thereby investing existing domestic corporations (which of course embraced the complainant in that suit, although its business was historical and not commercial) with an exclusive right to the use of their names. This too was a suit by one corporation to restrain another from

taking its name, and was not like the suit at bar, an effort to enjoin the bestowal of a name on a mere place.

The true doctrine is announced on the case of *Colonial Dames of America* v. *Colonial Dames of the State of New York*, 29 Misc. Rep. (N. Y.), 10, where it was held that this principle (referring to the principle that a corporation has an exclusive right to the use of its corporate name, like a right to use a trade mark) should not be applied with strictness, to actions for infringement of the right to the exclusive use of a name between corporations formed for patriotic or unselfish ends.

The word "seminary" is not an appropriate name for a municipal corporation. It is an English word to be found in all the dictionaries, and could properly be applied to any respectable institution of learning. The railroad company has as much right to its use as the complainant. There is running through all the cases on the subject of the protection of corporation names on the trade mark theory, this principle: A corporation cannot acquire an exclusive right, even on the theory of trade mark, to an English word. *Hygeia Distilled Water Co.* v. *Hygeia Ice Co.*, 72 Conn., 646, modifying a previous decision in the same case in 70 Conn.

"Seminary" is not complainant's name; its name is the "Town of Seminary," and there is no charge in the bill that the depot is called the "Town of Seminary."

*Watkins & Easterling*, for appellee.

The theory of complainant's bill in this case is, that the town of Seminary has been granted a charter, under the laws of the State of Mississippi, to operate a municipality under the name of Seminary, and that even prior to the existence of such charter this complainant was from a time "whereof the memory of man runneth not to the contrary" operating as a municipality, without an express grant from the state. That, therefore, on account of its ancient user, from which a grant will be presumed, and on account of its express grant from the state, it has a prop-

erty right in and to the same, as applied to a town in its immediate community.

In 26 Am. & Ency. Law (1st ed.), 268, the following statement of the rule is found: "Corporations being artificial, legal entities, have no other personality than that created by their organization; the whole identity of the corporation resides in its name. It is that by which it exists. The names of corporations as a general rule are peculiar and somewhat arbitrary, and there is no necessity for one corporation adopting the same name as another; to do so, therefore, is generally a strong indication of an intent to defraud the first user of the name, and gives rise to great danger of deception to the public. The remedy for such a condition of affiairs is so easy that the courts will not often hesitate to require a corporation to change its name if it is too much like that of a rival who complains."

In 7 Am. & Eng. Ency. Law (2d. ed.), 689, the following statement of rule is announced: "A corporation like an individual may acquire a property right to the use of the name as a trade mark, or as incidental to the good-will of the business, and if it has acquired such a right, it will of course be protected in its enjoyment to the same extent as an individual would be. It cannot be deprived of this right by the assumption of its name by a subsequently created corporation."

In Clark on Corporations, p. 73, the following rule is announced: "At common law and independently of statute, a corporation has an exclusive right to the use of its name, and it will be protected by a court of equity by an injunction against its use by another corporation. The name of a corporation is a necessary element of its existence, and, aside from any statute, the right to its exclusive use will be protected upon the same principles that persons are protected in the use of a trade mark."

It follows, as a matter of course, that if a corporation can exist only by name, and the state through its sovereignty has conferred upon it the authority to exist under that name, then

the state, through its courts, will protect it in the use of its name.    If that were not true, the grant from the state to operate under a given name, would be worthless, if any set of individuals could immediately incorporate under the same name; a charter from a state to a corporation to operate under a given name, carries with it the guarantee from the state, that its courts will protect it in the use of that name.

As will be seen from the authorities cited above, even without any statute on the subject, courts will prevent one corporation from using the name of another.

But counsel for the appellant say that this law does not apply to a municipal corporation; that a municipal corporation has the right to make streets and pass ordinances, but has no exclusive right to the name; that only a commercial corporation has an exclusive right to the use of its name.    We find but one authority directly upon that point, and that is the following statement contained in 1st Dillon on Municipal Corporations, 258.    It is as follows: "The name of a municipal corporation is absolutely essential to its existence."

If therefore, the name of a municipal corporation is absolutely essential to its existence, and the state has granted to this complainant the authority and power to operate and exercise whatever power it may legally operate and exercise under the name of "Seminary" will the courts not protect it in that thing, its name, without which it cannot carry out the object of its creation, and do those very things which the state has given it the right and power to do?

There are rights which the court will respect and protect where money is not involved.    It would be a sad commentary upon our judicial system if a man could not protect a right unless its infringement would cause him monetary loss.    There are rights just as sacred as the rights of making money.

The court must bear in mind that Mr. Dillon says the name of a corporation is absolutely essential to its existence, and if the name is absolutely essential to the existence of a municipal

corporation as much as that of a business corporation, why should it not be protected in that which is essentially necessary to its being?

Why does the appellant go half a mile north of the appellee and call its station Seminary? The presumption of law is that the name "Seminary" will give to its station something of value, or appellant would use some other name.

Argued orally by *R. H. Thompson*, for appellant, and by *W. H. Watkins*, for appellee.

TERRAL, J., delivered the opinion of the court.

That the Gulf & Ship Island Railroad Company should have established on its line of road two stations named "Seminary" is shameful; but what legal concern this is to the town of Seminary we fail to see. The injury complained of is that a person desiring to visit the town of Seminary is sold a ticket to Seminary and is put off at the station of that name, which is a half mile north of the point of his destination, and thereby such person suffers inconvenience and loss in getting to the town of Seminary. A second injury is alleged to be that, when a merchant in the town of Seminary contracts with the railroad company for the shipment of goods to him, such goods are put off at the Seminary station most distant from him, to his inconvenience and loss. That these are actionable grievances to the merchant and traveler injured thereby we are strongly inclined to believe; but how does either of these wrongs constitute a legal wrong to the town of Seminary, as a public political corporation of the State of Mississippi? If appellant should call its depot here in the city of Jackson by the name of "Seminary," and thus have three depots of that name on its line of road, such conduct would be highly injurious to all persons affected thereby; but what power conferred upon the town of Seminary gives it the right of action in such case? A right of action lies only in favor of

a person who is injured and suffers loss by the act complained of. Facilities of travel and of commerce are greatly useful, and wrongful obstructions of either may be grounds of action, but of action only by those whose legal rights are infringed and who suffer loss therefrom. The appellee mistakes the fact when it supposes that the name "Seminary" designates itself, and can legally only designate itself, in such sense as that nothing else can legally bear that name. In truth its name is not "Seminary," but the "Town of Seminary." It gets its name, as well as its powers, from its incorporation as the "Town of Seminary." It acquired no civil right from its previous incorporation as the "Village of Seminary," or from its old incorporation as a school under the name of "Zion Seminary." Whatever rights a municipality of its grade may have under our code it has, and no others. That the Gulf & Ship Island Railroad should have frequent and convenient stations along the line of its road is a necessity of its business; that these stations should be named, and named by itself, is equally certain; and that the stations should be named to facilitate, rather than confuse, the public dealing with it, seems to us highly important. But the town of Seminary, as a legal person created by law, has only the powers conferred upon it by law, and none known to us can authorize it to bring suits for the grievances set out in this bill. The grievances set out are not grievances of the town of Seminary as a political corporation. The rights invaded are not rights of the municipality. The bill is not maintainable.

*Reversed and remanded.*